[Cite as *State v. Parkhurst*, 2016-Ohio-1018.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-T-0041** |
| BRUCE R. PARKHURST, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Niles Municipal Court, Case No. CRB 1400694.

Judgment: Affirmed.

*Terry A. Swauger,* Niles City Prosecutor, 15 East State Street, Niles, OH 44446 (For Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1}     Defendant-appellant, Bruce R. Parkhurst, Jr., appeals his convictions for Obstructing Official Business and Loud Exhaust, following a jury trial in the Niles Municipal Court.  The issue before this court is whether a conviction for Obstructing Official Business may be sustained based on the defendant's arguing and refusing to cooperate with police officers.  For the following reasons, we affirm the decision of the court below.

**{¶2}** On July 29, 2014, Parkhurst was charged with Obstructing Official Business, a misdemeanor of the second degree in violation of R.C. 2921.31 (Case No. CRB 1400694), and Loud Exhaust, a minor misdemeanor in violation of R.C. 4513.22 (Case No. TRD 1401771).

**{¶3}** On August 7, 2014, Parkhurst pled not guilty to both charges at the arraignment.

**{¶4}** On January 15, 2015, the case was tried before a jury.

**{¶5}** The following testimony was presented on behalf of the State.

**{¶6}** Patrolman Kristopher Hodge of the Weathersfield Police Department testified that, on July 29, 2014, he was "on State Route 46 sitting in the old McQuaids Gas Station on stationary patrol," when he "heard a vehicle traveling northbound on State Route 46" with "a very loud, excessive muffler." Hodge followed the vehicle as far as Mckees Lane where he initiated a traffic stop "for an excessive loud muffler."

**{¶7}** Patrolman Hodge approached Parkhurst, the driver of the vehicle, and tried to explain the reason for the stop but "he kept interrupting me and stopped me and was trying to talk over me." Parkhurst presented his driver's license but did not provide proof of insurance. There was another person in the front passenger seat of the vehicle. Hodge returned to his patrol car to run the license on his computer and called for backup.

**{¶8}** After another officer, Patrolman Daniel Lowery, arrived, Patrolman Hodge returned to Parkhurst's vehicle to issue a citation:

> I began to explain the traffic citation to him and explain what he needed to do if he wanted to contest the ticket. As I was talking he interrupted me several times and obstructed me from giving him his traffic ticket. He continued to argue with me for giving him the

2

ticket. At that time I told Mr. Parkhurst I wasn't arguing with him and I needed him to sign his traffic ticket. Mr. Parkhurst said he was not signing the traffic ticket. Officer Lowery * * * was on the passenger side of the vehicle standing there observing what was going on. As Mr. Parkhurst continued to argue with me, he immediately went to his left pocket in an assertive move. At that time I stepped back not knowing what he was doing. Officer Lowery drew his service weapon at Mr. Parkhurst and ordered him to put his hands up in the air. Mr. Parkhurst again refused, delaying me to give him his traffic citation. Finally after several commands to Mr. Parkhurst by Officer Lowery, Mr. Parkhurst finally put his hands up. He had a cell phone in his left pocket. At that time I advised Mr. Parkhurst to exit the vehicle at which time he refused to do so. After, again, two or three more commands to exit the vehicle he refused. I then opened his vehicle and took him out of the vehicle and placed him into custody.

{¶9} Patrolman Lowery of the Weathersfield Police Department testified that Parkhurst was "yelling" and "arguing" as Patrolman Hodge tried to explain the citation. Lowery confirmed that Parkhurst "made a quick move with his left hand to the left side of his body, either to his pocket or his waist band," which caused him to draw his service weapon. Lowery "yelled at him several times to put his hands in the air," and, "eventually after the third time he pulled up a cell phone that he had in his hand":

> Mr. Parkhurst was told to put the phone down. He ended up arguing with me some more. Officer Hodge told him to get out of the vehicle and he refused to get out of the vehicle. Officer Hodge opened the door and pulled Mr. Parkhurst out of the vehicle and at the time, I came around * * * front to assist Patrolman Hodge. He tried cuffing Mr. Parkhurst. Mr. Parkhurst resisted. We got him cuffed and placed him in the back of the vehicle.

{¶10} At the close of the State's case, counsel for Parkhurst moved for acquittal, which motion the municipal court denied.

{¶11} The following witnesses testified on Parkhurst's behalf:

3

{¶12} William Salsgiver, a mechanic at B & M Automotive, testified that he examined Parkhurst's vehicle on August 20, 2014, and found that it was working properly and was not excessively loud.

{¶13} Raymond Anderson, the passenger in Parkhurst's vehicle, testified that the initial interaction between Parkhurst and Patrolman Hodge was nonconfrontational and that Parkhurst was holding his cell phone in his hand during the entire stop. When Patrolman Hodge returned to the vehicle with the citation, followed by Patrolman Lowery, Parkhurst told him, "I don't feel I have to sign the ticket." This "infuriated the Officer and he started basically calling him names."

{¶14} The "next thing" that happened was that Patrolman Lowery "made a quick move like a step or two back and he drew his gun." Patrolman Hodge began "literally flying off with names and they grabbed [Parkhurst] and pulled him out of the vehicle," while he protested, "I'm not resisting." Although Hodge instructed Parkhurst to get out of the vehicle, he was not given an opportunity to comply before being yanked out.

{¶15} Parkhurst testified that he was unaware of the reason why he was being stopped on July 29, 2014. He complied with Patrolman Hodge's request to present his license. Hodge advised that the muffler was loud and he "disagreed with him." Hodge asked for his insurance card and registration but these documents were not in the vehicle. When Hodge went back to his patrol car everything seemed fine.

{¶16} Parkhurst used the camera on his phone to take pictures of the flashing lights and the second officer who had arrived on the scene.

{¶17} Patrolman Hodge returned and "demanded that I sign the ticket." Parkhurst replied "that I didn't understand the ticket so I didn't want to sign it." Hodge

4

began to swear at and berate him. At that point, Parkhurst noticed that Patrolman Lowery had "a gun pointed at my head * * * gangster style, * * * just inside the window of my van and he asked me what the hell I was doing."

{¶18} Parkhurst testified that neither officer gave him commands or instructions at this time. Using the cell phone, he "tried to take a picture * * * of the Officer pointing the gun." While taking the picture, "the Officer on my driver side hit my arm and knocked the phone out of my hand across the van." Parkhurst continued:

> Without warning he opened the door and yanked me out of the van and started calling me an Asshole and kept saying Sovereign Citizen, kept calling me Sovereign. I said, "I'm not resisting. I do not comply with this. I contest this."

{¶19} The jury found Parkhurst guilty of Obstructing Official Business and Loud Exhaust.

{¶20} On March 2, 2015, the municipal court sentenced Parkhurst for Obstructing Official Business. The court ordered him to pay a fine of $150, to pay court costs of $112, and to serve 90 days in jail with 90 days suspended. Parkhurst's sentence was memorialized in a March 25, 2015 Amended Judgment Entry.

{¶21} On April 27, 2015, Parkhurst filed a Notice of Appeal from Case No. CRB 1400694, the Obstructing Official Business charge.

{¶22} On appeal, Parkhurst raises the following assignments of error:

{¶23} "[1.] The appellant's conviction for obstruction of official business is not supported by sufficient evidence and is, therefore, in violation of the appellant's due process rights."

{¶24} "[2.] Both of the appellant's convictions are against the manifest weight of the evidence."

5

**{¶25}** "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).

**{¶26}** "A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶27}** The Obstructing Official Business statute provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A).

**{¶28}** "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's duties," and "[a] mere failure or refusal to respond to an officer's request does not constitute obstructing official business." (Citations omitted.) *State v. McLaughlin*, 2nd

Dist. Montgomery No. 26521, 2015-Ohio-4611, ¶ 13. "With respect to R.C. 2921.31(A), [this court has] previously held that 'an individual cannot be found guilty of obstructing official business by doing nothing because the statute specifically requires an offender to act,' citing to case law throughout Ohio." *State v. Vitantonio*, 995 N.E.2d 1291, 2013-Ohio-4100, ¶ 13 (11th Dist.), citing *State v. Brown*, 11th Dist. Lake No. 2006-L-064, 2006-Ohio-6872, ¶ 29.

**{¶29}** Relying on *Vitantonio*, Parkhurst maintains that he "committed no affirmative act which would amount to Obstructing Official Business." With respect to reaching for his phone, "there is no indication that the Appellant had been instructed to keep his hands out of his pockets." With respect to refusing to sign the citation, "the arresting officer readily admitted that there was no legal requirement" that he do so. Appellant's brief at 6.

**{¶30}** In *Vitantonio*, this court reversed a conviction for Obstructing Official Business "where appellant refused to respond to the persistent knocking of law enforcement," attempting to investigate a domestic disturbance. *Vitantonio* at ¶ 15. "[A]ppellant's act of refusing entry was, at most, an inconvenience for the officers who had to seek out a key and ultimately consider breaking down the door," before the door was eventually opened. *Id.* at ¶ 16.

**{¶31}** The facts of the present case, however, are materially distinguishable from those of *Vitantonio*. Here, Parkhurst's argumentativeness constituted an affirmative act that, according to the testimony of Patrolman Hodge, did delay him from issuing the citation. That delay was increased by Parkhurst's reaching for his phone in a manner

7

that caused Patrolman Lowery to draw his weapon and his subsequent refusal to put his hands up and/or put the phone down and to exit the vehicle.

{¶32} Such conduct has been found to be sufficient to sustain a charge of Obstructing Official Business. In *Warren v. Lucas*, 11th Dist. Trumbull No. 99-T-0019, 2000 Ohio App. LEXIS 2146 (May 19, 2000), this court sustained a conviction for Obstructing Official Business where the offender repeatedly interrupted officers attempting to question a witness: "his volume and demeanor * * * made it impossible for officers to question Ms. Bowling." *Id.* at 9. This court held that "it was necessary to examine the overall conduct of an appellant to determine whether his yelling at police officers and refusing to cooperate with their orders was sufficient to sustain a conviction for obstruction of official business." *Id.* at 8. *Also*, *State v. Willey*, 5th Dist. Stark No. 2014CA00222, 2015-Ohio-4572, ¶ 24 ("[a]ppellant did not physically resist police in the instant case but her argumentative demeanor needlessly escalated the entire incident and entirely stalled the investigation into the original complaint"); *State v. Florence*, 12th Dist. Butler No. CA2013-08-148, 2014-Ohio-2337, ¶ 13 ("Florence's purposeful loud, boisterous, and uncooperative conduct made the performance of their duties more difficult"); *State v. Niebauer*, 11th Dist. Ashtabula No. 2007-A-0097, 2008-Ohio-3988, ¶ 22 ("Niebauer's refusal to obey Deputy Roach's orders [to remain in the car and place her hands where he could see them] gave him probable cause to believe that she was impeding the performance of his duty in violation of R.C. 2921.31"); *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 31 (1st Dist.) (appellant's "volume and demeanor and his other actions that hindered the officers in conducting

8

their investigation \* \* \* 'crossed the line between fair protest and actual obstruction'") (citation omitted).

{¶33} Finally, we note that it does not matter if Parkhurst's conduct was in contravention of a patrolman's order. "A conviction for obstructing official business is properly focused \* \* \* on the actor's conduct and the effect that conduct has on a public official." *State v. Neptune*, 4th Dist. Athens No. 99CA25, 2000 Ohio App. LEXIS 1884, 27-28 (Apr. 21, 2000).

{¶34} The first assignment of error is without merit.

{¶35} In Ohio, "a court of appeals has the authority to reverse a judgment as being against the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." Ohio Constitution, Article IV, Section 3(B)(3).

{¶36} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶37} Parkhurst claims his convictions are against the manifest weight of the evidence as "the only corroboration for the arresting officer's testimony was the backup

9

officer that showed up at the scene and only viewed events after the arresting officer was explaining the ticket to the Appellant," whereas "the Appellant presented testimony of his passenger and the passenger verified that things did not get out of control until the arresting officer became upset with the fact that Appellant refused to sign the ticket." Appellant's brief at 9.

{¶38} We find no reason to disturb the fact-finder's resolution of the conflicting testimony presented at trial. The fact that Patrolman Hodge "called for a backup car due to the continued arguing from Mr. Parkhurst" even before he refused to sign the citation gives credence to the patrolmen's version of events.

{¶39} With respect to the Loud Muffler conviction, Parkhurst failed to appeal this conviction and, therefore, it is not subject to review. Local Appellate Rule 3(B)(3)(a) ("[a] separate Notice of Appeal shall be filed in the trial court for each case appealed whether or not the case was consolidated in the trial court for hearing with one or more other cases").

{¶40} The second assignment of error is without merit.

{¶41} For the foregoing reasons, Parkhurst's conviction for Obstructing Official Business is affirmed. Costs to taxed against appellant.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.

10