[Cite as *State v. Swaney*, 2019-Ohio-3141.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  2-18-20

      v.

MARK A. SWANEY,                          O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2018 CRB 396

Judgment Affirmed

Date of Decision:   August 5, 2019

APPEARANCES:

    *Thomas J. Lucente, Jr.* for Appellant

    *Laia Zink* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Mark A. Swaney ("Swaney"), appeals the November 2, 2018 judgment of the Auglaize County Municipal Court. For the reasons that follow, we affirm.

{¶2} This case stems from an April 28, 2018 incident in which Mary Music ("Music"), a tenant at Defiance Commons, contacted the Wapakoneta Police Department to assist her in entering her apartment after she lost her keys. (Doc. No. 7). Swaney, the maintenance worker at the complex, got into an altercation with one of the responding officers, culminating in his arrest. (*Id.*).

{¶3} On April 30, 2018, a complaint was filed in the Auglaize County Municipal Court charging Swaney with a single count of obstructing official business in violation of R.C. 2921.31(A), a second-degree misdemeanor. (Doc. No. 8). On May 2, 2018, Swaney appeared for arraignment and entered a plea of not guilty. (Doc. No. 12).

{¶4} A jury trial was held on September 24, 2018. (Doc. No. 53); (Sept. 24, 2018 Tr. at 1). At the close of the State's case, Swaney made a motion for acquittal under Crim.R. 29, which the trial court denied. (Sept. 24, 2018 Tr. at 112-113). The jury found Swaney guilty of obstructing official business in violation of R.C. 2921.31(A). (Doc. No. 53); (Sept. 24, 2018 Tr. at 162). On September 25, 2018, the trial court filed its judgment entry of conviction. (Doc. No. 53).

**{¶5}** On November 2, 2018, the trial court sentenced Swaney to three years of community control, a $500 fine, and 90 days in jail with all 90 days suspended. (Doc. No. 55); (Nov. 2, 2018 Tr. at 20-23).

**{¶6}** On November 21, 2018, Swaney filed a notice of appeal. (Doc. No. 60). He raises three assignments of error. We will address the first two assignments of error together.

### Assignment of Error No. I

**The trial court erred in denying appellant's motion for acquittal at the close of the State's case in chief, where there was legally insufficient evidence to establish each material element of the offense beyond a reasonable doubt.**

### Assignment of Error No. II

**Appellant's conviction on Obstruction of Official Business was against the manifest weight of the evidence and is contrary to law.**

**{¶7}** In his first two assignments of error, Swaney argues that the trial court erred by denying his Crim.R. 29(A) motion for acquittal and that his obstructing-official-business conviction is against the manifest weight of the evidence.

**{¶8}** Crim.R. 29(A) provides:

(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the

evidence is insufficient to sustain a conviction of such offense or

offenses. The court may not reserve ruling on a motion for judgment

of acquittal made at the close of the state's case.

"An appellate court reviews a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.).

*See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶11} Swaney was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

To obtain a conviction for obstructing official business the State must prove that (1) the defendant acted (2) without privilege to do so and (3) with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity and that (4) the defendant's act hampered or impeded the public official (5) in the performance of the public official's lawful duties. *See State v. Pierce*, 3d Dist. Seneca No. 13-16-36, 2017-Ohio-4223, ¶ 11, quoting *State v. Dice*, 3d Dist. Marion No. 9-04-41, 2005-Ohio-2505, ¶ 19, citing R.C. 2921.31(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "'The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.'" *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist.2001), quoting *State v. Hardin*, 16 Ohio App.3d 243, 245 (10th Dist.1984).

{¶12} At trial, Music, a resident of Defiance Commons, testified that on April 28, 2018, she called the Wapakoneta Police Department for assistance getting into her apartment after she lost her keys. (Sept. 24, 2018 Tr. at 61-62). Music stated that prior to contacting the police, she asked Swaney, the maintenance worker at Defiance Commons, to unlock her door for her, but he refused. (*Id.* at 62). Music stated that when the police officers arrived, they helped her get into her apartment through an unlocked window. (*Id.* at 63).

{¶13} On cross-examination, she stated that the policy at Defiance Commons is that the management will only unlock apartments during their business hours on Tuesdays and Thursdays because management does not consider it an emergency. (*Id.* at 63-64).

{¶14} Next, the State offered the testimony of Patrolman Cory Zwiebel ("Patrolman Zwiebel"), a patrol officer for the Wapakoneta Police Department. (*Id.* at 67-68). Patrolman Zwiebel testified that he was dispatched on April 28, 2018 at approximately 3:30 p.m. to Defiance Commons to help Music into her apartment. (*Id.* at 68-69, 74). Patrolman Zwiebel identified part of State's Exhibit 1 as his body camera footage from the incident.[1] (*Id.* at 73).

---

[1] State's Exhibit 1 is a disc containing three separate files. (*See* State's Ex. 1). The disc contains: (1) an audio recording of Music's call to the Wapakoneta Police Department on April 28, 2018, (2) a video recording of Officer Zwiebel's body camera footage from the call to Defiance Commons on April 28, 2018, and (3) a video recording of Officer Clark's body camera footage from the call to Defiance Commons on April 28, 2018. (*See* State's Ex. 1).

{¶15} Patrolman Zwiebel's body camera footage shows Patrolman Zwiebel and Patrolman Jared Clark ("Patrolman Clark") arriving at the scene. (State's Ex. 1). Music stated that she had just asked Swaney to open the door to her apartment for her but that he "slammed the door in [her] face." (*Id.*). Upon Patrolman Zwiebel's request, Music directed the police officers to Swaney's apartment, which is also located at Defiance Commons. (*Id.*). Patrolman Zwiebel knocked on Swaney's door and asked him if he is "able to get [Music] into her apartment" to which Swaney responds, "Why should I?" (*Id.*). After Swaney stated again that he would not unlock the door to Music's apartment, Patrolman Zwiebel walked away from Swaney's door and told Music that she could use "whatever means" necessary to get into her apartment. (*Id.*). Swaney, who was still standing in the open doorway of his apartment, yelled out that they better not break the window. (*Id.*). Patrolman Zwiebel examined the front window of Music's apartment and, upon finding it unlocked, was able to open the window for Music to crawl in. (*Id.*).

{¶16} While Patrolman Zwiebel was working on opening the door and window, Swaney came over and stood on the sidewalk outside of Music's apartment. (*Id.*). He yelled to Music and the police officers not to break the window. (*Id.*). Patrolman Zwiebel then instructed Swaney to leave the scene if he was not going to offer assistance. (*Id.*). After Music entered her apartment, Patrolman Zwiebel turned to walk away and found Swaney standing on the

sidewalk.  (*Id.*).  The officers then began walking to their patrol vehicles while Swaney followed behind them and told them that they were on private property and that they did not have the authority to be there.  (*Id.*).

{¶17} The officers continued walking to their vehicles when Swaney again told them not to come back to Defiance Commons.  (*Id.*).  Patrolman Zwiebel then told Swaney, "Obviously you do not have the manhood to help somebody out." (*Id.*).  Swaney was visibly upset by the comment and continued to engage Patrolman Zwiebel in conversation.  (*Id.*).  Swaney moved directly in front of Patrolman Zwiebel on the sidewalk, standing in the pathway between Patrolman Zwiebel and his patrol vehicle.  (*Id.*).  Despite repeated instructions to move out of the way, Swaney did not move.  (*Id.*).  As a result, Patrolman Zwiebel was forced to walk around him.  (*Id.*).  As he moved past Swaney, Patrolman Zwiebel appeared to inadvertently brush against Swaney, who yelled out angrily.  (*Id.*).  Patrolman Zwiebel then walked to his patrol vehicle and unlocked and opened the vehicle door. (*Id.*).

{¶18} Patrolman Zwiebel then saw Swaney standing by the vehicle and shut his patrol vehicle door without getting in.  (*Id.*).  Patrolman Zwiebel and Swaney engaged in more conversation and Patrolman Zwiebel again opened the door to his patrol vehicle.  (*Id.*).  Patrolman Zwiebel asked Swaney for the name of his boss so that he could submit a complaint.  (*Id.*).

{¶19} Patrolman Zwiebel then locked his vehicle and began walking toward the apartment of the property manager, Marjorie Buettner ("Buettner"). (*Id.*). As Patrolman Zwiebel and Swaney moved closer to the apartment, Swaney began to walk faster and arrived at Buettner's door ahead of Patrolman Zwiebel. (*Id.*). Swaney then pointed to a piece of paper taped to the screen door and asked, "Notice that sign?" (*Id.*). Patrolman Zwiebel asked Swaney to move away from the door. (*Id.*). Instead of complying, Swaney ordered Patrolman Zwiebel to back up. (*Id.*). Swaney was then arrested. (*Id.*).

{¶20} Explaining what was depicted in the footage, Patrolman Zwiebel testified that it is standard protocol for him to tell an individual locked out of their vehicle or their home that are able to employ whatever means are necessary to gain access to the vehicle or home. (Sept. 24, 2018 Tr. at 70). He also testified that after he aided Music in gaining access to her apartment, he planned on getting back into his patrol vehicle and leaving the scene. (*Id.* at 71). Patrolman Zwiebel testified that after Swaney became argumentative and questioned the officers' authority to be on the premises, Patrolman Zwiebel decided that he wanted to speak to Swaney's supervisor to get additional names and telephone numbers so that they could "[t]ry to avoid this problem in the future." (*Id.* at 72).

{¶21} Patrolman Zwiebel stated that Swaney's actions delayed the performance of his duties as a law enforcement officer because Swaney forced

Patrolman Zwiebel to walk around him, argued with Patrolman Zwiebel, and refused to follow Patrolman Zwiebel's directions. (*Id.* at 72-73). He also testified that Swaney "block[ed] [his] ability to knock on the [property] managers [sic] door" and "add[ed] extra time." (*Id.* at 72-73).

{¶22} On cross-examination, Patrolman Zwiebel testified that Swaney could choose not to unlock Music's door and that his refusal to assist was not a crime. (*Id.* at 81). Patrolman Zwiebel stated that he could hear the concern in Swaney's voice in response to Patrolman Zwiebel's comment to Music that she could employ whatever means were necessary to gain entrance into her apartment, and he believed Swaney's concern was reasonable. (*Id.* at 83).

{¶23} Patrolman Zwiebel admitted that he became frustrated with Swaney and acknowledged that "everything elevated" after he made the comment about Swaney's manhood. (*Id.* at 88-89). Patrolman Zwiebel acknowledged that when he got into the verbal confrontation with Swaney by his patrol vehicle, his job had concluded and he could have left. (*Id.* at 89). He admitted that it had become a "standoff" between the two men and he was not going to be the first to back down. (*Id.* at 93). He also acknowledged that he chose to reengage Swaney when he was at his police cruiser. (*Id.*).

{¶24} Finally, Patrolman Zwiebel testified that his reasons for going to Buettner's door were to file a complaint against Swaney, inquire about the

apartment complex's rules regarding tenants who have been locked out of their apartments, and look into how to resolve similar issues in the future, such as through a master key kept at the police station. (*Id.* at 98).

**{¶25}** On re-direct examination, Patrolman Zwiebel testified that if he had not gotten into the confrontation with Swaney and had been able to get back into his patrol vehicle without incident, he would have gone back on patrol and been available for incoming calls. (*Id.* at 102). He further testified that his confrontation with Swaney kept him from responding to other calls. (*Id.*).

**{¶26}** The State next offered the testimony of Patrolman Clark. (*Id.* at 103). Patrolman Clark testified that he activated his body camera during the call because Swaney began acting aggressively toward Patrolman Zwiebel. (*Id.* at 104-105). Patrolman Clark agreed that once Patrolman Zwiebel made the comment regarding Swaney's "manhood," the situation between Swaney and Patrolman Zwiebel further escalated. (*Id.* at 108). Patrolman Clark stated that he observed Swaney approach Patrolman Zwiebel in an "aggressive manner" and that it escalated further as the officers were attempting to leave the scene. (*Id.*). Finally, Patrolman Clark identified part of State's Exhibit 1 as his body camera footage from the incident. (*Id.* at 104-105). (*See* State's Ex. 1). Patrolman Clark's body camera footage corroborates Patrolman Zwiebel's account of the incident. (*See* State's Ex. 1).

{¶27} Thereafter, the State rested. (Sept. 24, 2018 Tr. at 112). State's Exhibit 1 was admitted by stipulation. (*Id.*). Swaney then made a Crim.R. 29 motion for acquittal, which the trial court denied. (*Id.* at 112-113).

{¶28} Swaney offered the testimony of Buettner, the Defiance Commons property manager. (*Id.* at 114, 116). Buettner testified that on April 28, 2018, she had a note affixed to her apartment door stating that she was sleeping. (*Id.* at 116). Buettner stated that she is the direct supervisor of Swaney, who is employed as the maintenance worker at Defiance Commons. (*Id.* at 117). Buettner testified that although Swaney is not typically "on call," part of his job description is to respond to emergency situations, which are defined as fire, a major water break, an electrical problem, and no heat in the winter. (*Id.* at 118). Buettner further testified that during office hours, Swaney lets tenants into their apartments when they lock themselves out, although that is "not really" part of his job description. (*Id.* at 118-119).

{¶29} Finally, Swaney testified in his defense. (*Id.* at 126). He stated that he is the maintenance worker at Defiance Commons and his supervisor is Buettner. (*Id.* at 127-128). He stated that except for specifically defined emergency situations, he is not on call. (*Id.* at 129). Swaney stated that he does not have any responsibility to let tenants into their apartments, but admitted that he has done so in the past. (*Id.*). Swaney testified that Music came to his door on April 28, 2018 to request his

assistance in unlocking her door. (*Id.* at 130). He admitted that he refused to help, but he denied slamming the door in Music's face "that day." (*Id.*).

{¶30} Swaney testified that he became concerned when he heard Patrolman Zwiebel tell Music that she could use whatever means were necessary to enter her apartment. (*Id.* at 131). He stated that, as the maintenance worker, he felt it was his responsibility to witness any kind of property damage. (*Id.* at 131-132). Swaney denied interfering "in any way" with the police officers gaining access into Music's apartment. (*Id.* at 132). Swaney admitted that as the police officers were walking back to their vehicles, he told them they did not have any reason to be there. (*Id.*). However, he contended that he misspoke and meant to convey to the police officers that they did not have "any right" to knock on his door for assistance with a locked door because his door is private property. (*Id.* at 132-133, 140). Swaney testified that he was bothered that the officers came to his door on a weekend to request help. (*Id.* at 133). Swaney denied threatening either officer. (*Id.*). He admitted that he was upset when Patrolman Zwiebel "question[ed] [his] manhood," and he believed that Patrolman Zwiebel's comment escalated the situation. (*Id.*).

{¶31} Swaney testified that he went with Patrolman Zwiebel to Buettner's apartment because he knew that she had a temporary sign on her door stating that she was sleeping and Swaney wanted to "protect" Buettner from the police officers coming to her door by making sure that they saw the note. (*Id.* at 134). Swaney

also admitted he wanted to make sure that he had the opportunity to tell Buettner "[his] side of the story." (*Id.*).

{¶32} Swaney further testified that his intent upon arriving at Buettner's door was to ensure that Patrolman Zwiebel saw the note on her door requesting that she not be disturbed. (*Id.* at 134-135). However, Swaney admitted that as his next course of action, he was going to "beat on [Buettner's] door." (*Id.* at 135). Swaney testified that he was trapped between Patrolman Zwiebel and Buettner's door, that he "[did not] know what [Patrolman Zwiebel] was going to do," and that Patrolman Zwiebel was "beyond angry" with him. (*Id.*). He stated that, as a result, he asked Patrolman Zwiebel to back up. (*Id.*).

{¶33} On cross-examination, Swaney stated that, as the Defiance Commons maintenance worker, he felt that it was his responsibility to witness the efforts Music and the police officers took to get Music into her apartment so that he would have an eyewitness account in the event that the property was damaged. (*Id.* at 136, 139). Swaney admitted that he has access to a key to Music's apartment, but that he did not bring the key out with him when Music and the officers were trying to get into Music's apartment. (*Id.* at 136-137).

{¶34} Swaney denied blocking Patrolman Zwiebel's pathway to his vehicle. (*Id.* at 141). He stated that he told Patrolman Zwiebel to move around him because Swaney "was standing on the sidewalk and [he] didn't have to move anywhere."

(*Id.*). He denied that he intended to start a confrontation by telling the officers to move around him. (*Id.*).

**{¶35}** Thereafter, Swaney moved to admit his exhibit and rested. (*Id.* at 142). Defendant's Exhibit A was admitted without objection.[2] (*Id.* at 142-143). The State did not present any additional witnesses on rebuttal. (*Id.* at 143).

**{¶36}** We first review the sufficiency of the evidence supporting Swaney's obstructing-official-business conviction. *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999).

**{¶37}** Swaney argues that the State failed to provide evidence demonstrating that he purposely committed an act and that it failed to demonstrate precisely what lawful duty was hampered or impeded by his conduct. Swaney does not argue that his conduct was privileged. Therefore, we will review only whether the State presented sufficient evidence to prove that there was (1) an act by Swaney (2) done with the purpose to prevent, obstruct, or delay Patrolman Zwiebel (3) that hampered or impeded Patrolman Zwiebel's performance of a lawful duty. *See State v. Cobb*, 2d Dist. Montgomery No. 19474, 2003-Ohio-3034, ¶ 8, fn.1.

**{¶38}** We conclude that Swaney's obstructing-official-business conviction is supported by sufficient evidence. First, the State presented sufficient evidence to

---

[2] Defendant's Exhibit A is a copy of a sign affixed to Buettner's office door defining emergency situations and listing emergency contact numbers. (Sept. 24, 2018 Tr. at 119). (*See* Defendant's Ex. A).

support a finding that Swaney engaged in an "act." "'"'Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act * * *."'"' *Pierce*, 2017-Ohio-4223, at ¶ 12, quoting *State v. Crowell*, 189 Ohio App.3d 468, 2010-Ohio-4917, ¶ 11 (2d Dist.), quoting *State v. Harrell*, 2d Dist. Montgomery No. 21736, 2007-Ohio-4550, ¶ 12. "'[O]ne cannot obstruct official business by doing nothing.'" *Id.*, quoting *Garfield Hts. v. Simpson*, 82 Ohio App.3d 286, 291 (8th Dist.1992). "A mere failure or refusal to respond to an officer's request does not constitute obstructing official business." *Crowell* at ¶ 11, citing *Harrell* at ¶ 12, citing *State v. Christman*, 2d Dist. Montgomery No. 19039, 2002-Ohio-2915, ¶ 53. However, failure to respond to a law enforcement officer's request, coupled with "loud, boisterous, and uncooperative conduct," may constitute an affirmative or overt act under R.C. 2921.31(A). *State v. Shoe*, 3d Dist. Shelby No. 17-17-22, 2018-Ohio-3006, ¶ 20, citing *Pierce* at ¶ 13. Moreover, moving into and blocking a law enforcement officer's path of travel falls into the realm of affirmative action for purposes of R.C. 2921.31(A). *See State v. Neftzer*, 62 Ohio Misc.2d 384, 387 (1992) (noting "that the affirmative placing of one's self in an officer's intended path of travel, * * * as distinguished from the mere failure to move from one's position, would constitute an act and *not* an omission"); *State v. Ghaster*, 8th Dist. Cuyahoga No. 90838, 2009-Ohio-2117, ¶ 51-52, 58 (upholding a conviction for obstructing official business

-17-

where the defendant moved into the pathway of the officers' patrol vehicles as the officers attempted to leave the scene).

{¶39} Here, any rational trier of fact could find beyond a reasonable doubt that Swaney engaged in an affirmative or overt act. The footage from Patrolman Zwiebel's body camera and his testimony establish that Swaney moved into the pathway of Patrolman Zwiebel on several occasions. Patrolman Zwiebel instructed Swaney several times to move out of the way, but Swaney refused to move, and in fact, demanded that Patrolman Zwiebel step around him, which he eventually did. The record also establishes that Swaney engaged in a foot race with Patrolman Zwiebel to Buettner's apartment. Swaney reached the apartment before Patrolman Zwiebel and then stood between Patrolman Zwiebel and the door. Again, Patrolman Zwiebel ordered Swaney to move and Swaney refused. Thus, by standing in the path of travel of Patrolman Zwiebel, blocking Patrolman Zwiebel's access to Buettner's door, and failing to heed the officer's repeated instructions to move out of the way, Swaney engaged in an affirmative act under R.C. 2921.31(A). *See Neftzer* at 387; *Ghaster* at ¶ 51-52, 58.

{¶40} Moreover, throughout the encounter, Swaney was uncooperative and argumentative with the officers. Although his initial decision not to assist the officers by unlocking Music's door was not an affirmative act under R.C. 2921.31(A), his actions thereafter did constitute an act. After the officers assisted

Music into her apartment, Swaney questioned their authority and told the officers that they do not have a right to be on the property. Throughout the encounter, he was argumentative, uncooperative, and hostile and thereby delayed Patrolman Zwiebel in exercising his duties. In the totality of the circumstances, Swaney's antagonistic behavior and demeanor constitutes an affirmative act under R.C. 2921.31(A). *See Shoe*, 2018-Ohio-3006, at ¶ 21 ("Shoe's choice to adopt an antagonistic demeanor with Officer Calvert constitutes an affirmative act."), citing *State v. Parkhurst*, 11th Dist. Trumbull No. 2015-T-0041, 2016-Ohio-1018, ¶ 31 ("Parkhurst's argumentativeness constituted an affirmative act that, according to the testimony of Patrolman Hodge, did delay him from issuing the citation."); *State v. Henry*, 10th Dist. Franklin No. 16AP-846, 2018-Ohio-1128, ¶ 56, quoting *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, ¶ 13 (1st Dist). ("Ohio courts have upheld convictions for obstructing official business in instances in which an individual prevented law enforcement officers from gaining control of a situation based upon 'belligerent and argumentative' behavior.").

{¶41} In addition, a rational trier of fact, evaluating Swaney's demeanor and conduct under the circumstances of the encounter, could find that it was Swaney's specific intention to prevent, obstruct, or delay Patrolman Zwiebel in the performance of his duties. Swaney's actions of stepping in front of Patrolman Zwiebel, both as the officer was en route back to his patrol vehicle and at Buettner's

door, coupled with his argumentative and uncooperative behavior and his proclamations that the officers did not have a right to be on the property could lead a rational finder of fact to find that it was Swaney's specific intention to delay Patrolman Zweibel or prevent him from performing his duties. Although Swaney argues that he did not intend to hinder the officers from performing their duties and that he was merely asking the officers questions and expressing his feelings, his assertions are undermined by his uncooperative behavior throughout the encounter, his decision to move into the line of travel of Patrolman Zwiebel, and his refusal to heed Patrolman Zwiebel's repeated requests for him to step aside. Therefore, we conclude that a rational trier of fact could infer that Swaney purposely acted to prevent, obstruct, or delay Patrolman Zwiebel from performing his official duties.

**{¶42}** Finally, the State presented sufficient evidence from which any rational trier of fact could find beyond a reasonable doubt that Swaney's conduct hampered or impeded Officer Zwiebel in the performance of his duties. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *Wellman* at ¶ 12. "[I]n order to be convicted for obstructing official business, there must be evidence presented indicating the defendant actually interfered with the performance of an official duty, thereby making the performance of that duty more difficult." *State v. Ertel*, 12th Dist.

Warren No. CA2015-12-109, 2016-Ohio-2682, ¶ 8, citing *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 28, citing *State v. Whitt*, 12th Dist. Butler No. CA89-06-091, 1990 WL 82593, * 2 (June 18, 1990). *See State v. Ellis*, 2d Dist. Montgomery No. 24003, 2011-Ohio-2967, ¶ 59 (noting that to "hamper or impede" a law enforcement officer, "'there must be some substantial stoppage of the officer's progress'" but there is no "'finite period of time [that] constitutes a "substantial stoppage"'"), quoting *Wellman* at ¶ 17-18.

{¶43} Swaney argues that he did not impede the officers in the performance of their official duties because the officers had completed their duty of assisting Music into her apartment when his confrontation with Patrolman Zwiebel occurred. We disagree. First, we note that Swaney invites us to view his actions in isolation. "However, 'the total course of the defendant's conduct must be considered' as opposed to 'viewing the acts of a defendant in isolation.'" *State v. Body*, 2d Dist. Montgomery No. 27732, 2018-Ohio-3395, ¶ 22, quoting *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 WL 635717, *2 (Aug. 18, 1999). "'Interference with the police by citizens must * * * be necessarily viewed as a continuum along which, at a certain point, the line is crossed.'" *State v. Lenzy*, 5th Dist. Stark No. 2018CA00023, 2018-Ohio-3485, ¶ 25, quoting *State v. Stayton*, 126 Ohio App.3d 158, 164 (1st Dist.1998).

**{¶44}** Here, the parties do not dispute that Swaney was not legally obligated to unlock Music's apartment door. Thus, when the officers came to Swaney's door and he declined to assist the officers, he was not breaking the law in so choosing. However, Patrolman Zwiebel's body camera footage and testimony indicates that Swaney delayed Patrolman Zwiebel from resuming his duties as a patrol officer by blocking him from getting to his patrol vehicle. *See State v. Ghaster*, 2009-Ohio-2117, at ¶ 52. Moreover, contrary to Swaney's arguments that Patrolman Zwiebel went to Buettner's door with the sole purpose to "tattle" on Swaney, Patrolman Zwiebel testified that his intentions when going to Buettner's door were (1) to ask for clarification regarding the apartment complex's rules regarding tenants who locked themselves out of their units, (2) to file a complaint against Swaney, and (3) to look into how to resolve the issue of tenants who have been locked out of their apartments in the future, perhaps through a master key kept at the police station. Thus, a rational trier of fact could determine that Patrolman Zwiebel was acting within his official capacity during his encounter with Swaney.

**{¶45}** Therefore, viewing the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have found that Swaney acted with the purpose to prevent, obstruct, or delay Patrolman Zwiebel's performance of an authorized act within his official capacity and that Patrolman Zwiebel was hampered or impeded in the performance of his lawful duties. Accordingly, we conclude that

Swaney's obstructing-official-business conviction is supported by sufficient evidence. As a result, the trial court did not err by denying Swaney's Crim.R. 29(A) motion for acquittal.

{¶46} Having concluded that Swaney's obstructing-official-business conviction is based on sufficient evidence, we next address Swaney's argument that his conviction is against the manifest weight of the evidence. *See Velez*, 2014-Ohio-1788, at ¶ 76.

{¶47} Swaney asserts that his conviction is against the manifest weight of the evidence because he had no legal responsibility to unlock Music's door. (Appellant's Brief at 14-16). Moreover, he contends that Patrolman Zwiebel was not performing a lawful duty by "[u]nlocking a door, questioning a resident's manhood, or engaging in a footrace to a resident's employer's office to tattle on him." (*Id.* at 16). Swaney contends that the jury lost its way because the judge and jury "seemed put off because [he] would not unlock the door and his apparent disrespect of the police officers." (*Id.*). We disagree.

{¶48} With regard to his argument that his conviction is against the manifest weight of the evidence because he had no legal responsibility to unlock Music's door, we note that, as outlined above, Swaney's initial decision not to assist the officers by unlocking Music's door was not an affirmative act under R.C. 2921.31(A). Thus, Swaney's failure to assist law enforcement officers does not

-23-

supply the basis of his conviction. Furthermore, with respect to his argument that the jury and the judge "seemed put off because Mr. Swaney would not unlock the door and his apparent disrespect of the police officers and convicted him on that basis rather than following the law," we find this allegation to be wholly without merit. The record of the trial proceedings is completely devoid of any indication that the judge or jury seemed "put off" by Swaney's decision not to unlock Music's door and his disrespect of the police officers.

{¶49} Rather, we conclude that the evidence in the record weighs strongly in favor of Swaney's obstructing-official-business conviction. First, the evidence overwhelmingly demonstrates that by twice blocking Patrolman Zwiebel's path of travel and by adopting a belligerent attitude toward Patrolman Zwiebel, Swaney engaged in affirmative or overt acts for purposes of R.C. 2921.31(A). Moreover, contrary to Swaney's argument, there is considerable evidence that these acts had the effect of hampering or impeding Patrolman Zwiebel in the performance of his lawful duties. Patrolman Zwiebel testified that his performance of his official duties was delayed by Swaney's actions because he was delayed in getting back to his patrol vehicle, "having to walk around" Swaney, "having to argue with [Swaney] for [Patrolman Zwiebel's] reason to be on the property," "adding extra time," "blocking [his] ability to knock on [Buettner's] door and make contact with her," and "not following [Patrolman Zwiebel's] directions." Patrolman Zwiebel stated

that he was "absolutely" delayed in his duties by Swaney's actions. Thus, the evidence weighs in favor of a finding that Patrolman Zwiebel was hampered or impeded in performing his duties.

{¶50} Finally, the evidence supports that Swaney acted with purpose to obstruct or delay Patrolman Zwiebel's performance of his lawful duties. Swaney testified that he did not act with the intention of delaying the officers in the performance of their duties. (Sept. 24, 2018 Tr. at 131-132). However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. "'When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."'" *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 50, quoting *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035 and 2010-L-041, 2011-Ohio-6845, ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it.'" *Id.*, quoting *In re N.Z.* at ¶ 79, citing *State v. Thomas*, 11th Dist. Lake No. 2004-L-176, 2005-Ohio-6570, ¶ 29. *See also State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Daley*, 3d Dist. Seneca No. 13-13-26, 2014-Ohio-2128, ¶ 68, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964). ""'A verdict

is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *Missler* at ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

**{¶51}** Here, the jury was presented with Swaney's testimony that his actions were not intended to obstruct or delay Patrolman Zwiebel. The jury was able to assign whatever credibility it deemed appropriate to Swaney's testimony and the fact that it ultimately disbelieved Swaney does not render his obstructing-official-business conviction against the weight of the evidence. Furthermore, as discussed in detail under our sufficiency-of-the-evidence analysis, the jury was presented with ample evidence from which it could infer that Swaney's actions were intended to prevent, obstruct, or delay the performance of Patrolman Zwiebel's official duties.

**{¶52}** Therefore, having weighed the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not clearly lose its way and create such a manifest miscarriage of justice that Swaney's conviction must be reversed. Accordingly, Swaney's conviction is not against the manifest weight of the evidence.

**{¶53}** Swaney's first and second assignments of error are overruled.

**Assignment of Error No. III**

**Defendant was denied the effective assistance of counsel as required by the Sixth Amendment to the U.S. Constitution.**

**{¶54}** In his third assignment of error, Swaney argues that his trial counsel was ineffective. Specifically, Swaney argues that his trial counsel failed to "properly lay out for the jury" that the State had failed in its burden of proof "in a way the jury could follow." (Appellant's Brief at 17). Furthermore, Swaney contends that his trial counsel failed to ask Patrolman Zwiebel "precisely what official business was being obstructed" and failed to "demonstrate to the jury just how out of line [Patrolman Zwiebel] was in his treatment of [Swaney]." (*Id.*).

**{¶55}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. "[C]ounsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's

essential duties to his client.  *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

**{¶56}** Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

**{¶57}** If the petitioner cannot prove one of the elements, "[i]t [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 20.

**{¶58}** Here, we conclude that Swaney has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness.  Swaney argues that he was denied the effective assistance of counsel because his trial counsel "failed to properly lay out for the jury how the [S]tate blatantly failed to prove all elements of Obstructing Official Business in a way the jury could follow." (Appellant's Brief at 17).  Swaney contends that "[s]imply breaking down each element and explaining the case to the jury based on each element could have gone a long way in helping the jury understand the obvious failings of the State's case." (*Id.*).  However, in closing arguments, Swaney's counsel did argue to the jury that the trial court failed to meet its burden of proof regarding several elements of the

offense. (*See* Sept. 24, 2018 Tr. at 146-151). Moreover, Swaney's trial counsel urged the jury to consult the jury instructions, which detail the elements of the offense. (*Id.* at 146). Swaney's trial counsel reasoned to the jury that, upon applying the elements of the offense to the facts presented in the trial, they would find that Swaney's conduct did not constitute the offense of obstructing official business. (*Id.* at 146-151). Thus, the jury was made aware of the elements of the offense and the need to find each proven beyond a reasonable doubt through the jury instructions, which Swaney's trial counsel referenced. Accordingly, we cannot conclude that Swaney has overcome the strong presumption that his trial counsel provided competent representation.

**{¶59}** Swaney also argues that his trial counsel was ineffective with respect to his treatment of Patrolman Zwiebel's testimony. Specifically, he argues that his trial counsel was ineffective because he failed to demonstrate "how out of line [Patrolman Zwiebel] was in his treatment of [him]" and that his trial counsel failed to ask Patrolman Zwiebel "precisely what official business was being obstructed." (Appellant's Brief at 17). We disagree.

**{¶60}** State's Exhibit 1, which includes Patrolman Zwiebel's body camera footage of the encounter, was admitted into evidence and played during the jury trial. (Sept. 24, 2018 Tr. at 73). (*See* State's Ex. 1, Patrolman Zwiebel's Body Camera Footage). Thus, the jury had the opportunity to see and hear the encounter

between Swaney and Patrolman Zwiebel in its entirety. Moreover, during cross-examination, Swaney's trial counsel thoroughly questioned Patrolman Zwiebel regarding his comments to Swaney. (Sept. 24, 2018 Tr. at 88-98). For instance, Swaney's trial counsel elicited admissions from Patrolman Zwiebel that his comment regarding Swaney's "manhood" was not necessary and that both Patrolman Zwiebel's and Swaney's actions were at fault for the escalation of their encounter. (*Id.* at 88-89).

{¶61} Furthermore, we do not find Swaney's argument that his trial counsel was ineffective because he failed to inquire from Patrolman Zwiebel "precisely what official business was being obstructed" compelling. Swaney assumes that Patrolman Zwiebel's answer to this proposed question would have been favorable to him and would have enticed the jurors to find him not guilty of obstructing official business. However, we note that if Swaney's trial counsel had asked Patrolman Zwiebel "precisely what official business was being obstructed" during cross-examination, Patrolman Zwiebel would have had the opportunity to answer the question in a manner that the jury may have found favorable to the State. Therefore, the decision not to ask the question may have been a tactical or strategic decision. Thus, we cannot find that his failure to clarify "precisely what official business was being obstructed" was unreasonable under the circumstances.

**{¶62}** Having concluded that Swaney's trial counsel's performance did not fall below an objective standard of reasonableness, we need not address whether Swaney was prejudiced by his trial counsel's performance.

**{¶63}** Accordingly, Swaney's third assignment of error is overruled.

**{¶64}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**