[Cite as *State v. Fails*, 2026-Ohio-1107.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JEFFERY W. FAILS,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-23


OPINION AND
JUDGMENT ENTRY


Appeal from Lima Municipal Court
Trial Court No. 24CRB02160-A2

Judgment Affirmed

Date of Decision:  March 30, 2026


APPEARANCES:

   *William T. Cramer* for Appellant

   *Matthew A. Pheneger* for Appellee

**ZIMMERMAN, P.J.,**

{¶1} Defendant-appellant, Jeffery W. Fails ("Fails"), appeals the April 21, 2025 judgment entry of conviction and sentencing of the Lima Municipal Court. For the reasons that follow, we affirm.

{¶2} This case stems from a traffic stop of Fails initiated by Officer Amy Glanemann ("Officer Glanemann") of the Lima Police Department. During the early morning hours of November 17, 2024, Officer Glanemann stopped Fails's vehicle after observing that the rear license plate light was not properly illuminated. When Officer Glanemann approached the vehicle, Fails informed her that he did not have a valid driver's license. Officer Glanemann returned to her police cruiser to issue a citation.

{¶3} Shortly thereafter, Officer Justin Wireman ("Officer Wireman") and Officer Jacob Cox ("Officer Cox") of the Lima Police Department arrived on the scene with a trained dog to conduct an open-air sniff of the stopped vehicle. During the open-air sniff, Fails was seated in the driver's seat, with a passenger in the front seat and another in the back. The dog alerted to the presence of possible narcotics on the passenger side of the vehicle. An investigation for illegal drugs ensued.

{¶4} Officer Cox instructed Fails to step out of the vehicle. After Officer Cox conducted a pat-down search for weapons, Fails was led to the front bumper of Officer Glanemann's cruiser—which was parked directly behind the stopped

vehicle. Fails was told to stay at the bumper of cruiser. Fails argued with the officers about their investigation and used his phone to record the police encounter. Officer Cox proceeded to the passenger side of the vehicle.

{¶5} As Officer Cox was removing the front-seat passenger from the stopped vehicle, Officer Glanemann instructed Fails to stay at the bumper of the police cruiser. Fails continued to argue with the officers about their investigation. At this point, Officer Brandon Stephenson ("Officer Stephenson") of the Lima Police Department approached Fails, pointed to the police cruiser, and told him to stay at the bumper. Despite being told multiple times to stay at the bumper of the cruiser, Fails stepped away from the police cruiser and moved toward Officer Cox at the passenger side of the stopped vehicle. As Fails was walking toward Officer Cox, Officer Wireman yelled at Fails to move back to the bumper.

{¶6} Video footage from the dashboard camera of Officer Glanemann's cruiser shows Fails stepping away from the bumper and walking toward Officer Cox. When Fails continued to take steps toward Officer Cox, Officer Stephenson approached Fails from behind and grabbed his arms. Officer Glanemann then ordered Fails to put his phone down. Officer Stephenson and Officer Glanemann attempted to secure Fails in handcuffs, but Fails tensed his arms and pulled against the officers.

{¶7} At this point, Officer Stephenson used a leg sweep to take Fails to the ground. On the ground, Fails kept his left arm under his body and refused to put his

hands behind his back. Both Officer Cox and Officer Wireman assisted in restraining Fails to deescalate the situation. The officers forcibly pulled Fails's left arm from underneath him and placed both hands behind his back.

{¶8} During the struggle with Fails, the two passengers were outside of the vehicle and yelling at the officers. Officer Wireman instructed the two passengers to stay back. After the officers secured Fails in handcuffs, he was placed in the back of Officer Glanemann's cruiser. The officers were then able to complete their investigation.

{¶9} On November 19, 2024, a complaint was filed in the trial court charging Fails with obstructing official business in violation of R.C. 2921.31(A), and resisting arrest in violation of R.C. 2921.33(A), both second-degree misdemeanors. On November 27, 2024, Fails appeared for arraignment and entered pleas of not guilty.

{¶10} On March 6, 2025, following a motion hearing, the trial court denied Fails's motion to suppress after finding that Officer Glanemann had probable cause to initiate the traffic stop.

{¶11} The case proceeded to a two-day jury trial on April 17, 2025. On April 18, 2025, the jury found Fails guilty of obstructing official business and resisting arrest. The trial court sentenced Fails to 90 days incarceration, with 75 days suspended on the condition of a one-year term of probation.

{¶12} Fails filed a notice of appeal on April 24, 2025, raising five assignments of error for our review. For ease of discussion, we will address the first, second, third, and fourth assignments of error together.

### First Assignment of Error

**Appellant's rights to due process under the state and federal constitutions were violated by a conviction for obstruction of official business that was not supported by sufficient evidence.**

### Second Assignment of Error

**Appellant's conviction for obstruction of official business was not supported by the weight of the evidence.**

### Third Assignment of Error

**Appellant's due process rights under the state and federal constitutions were violated by a conviction for resisting arrest that was not supported by sufficient evidence.**

### Fourth Assignment of Error

**Appellant's conviction for resisting arrest was not supported by the weight of the evidence.**

{¶13} In his first, second, third, and fourth assignments of error, Fails argues that his obstructing-official-business and resisting-arrest convictions are based on insufficient evidence and are against the manifest weight of the evidence.

*Standard of Review*

{¶14} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept separately.

**{¶15}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

**{¶16}** In contrast, when determining whether a verdict is against the manifest weight of the evidence, a reviewing court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387. A reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Nonetheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Sufficiency-of-the-Evidence Analysis*

{¶17} Fails was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides,

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶18} Fails was also convicted of resisting arrest in violation of R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

{¶19} In his first assignment of error, Fails argues that his obstructing-official-business conviction is not based on sufficient evidence because he "did not take any affirmative actions to hamper or impede the officers." (Appellant's Brief

-7-

at 11). Fails asserts that his "specific intention was merely to record the police encounter, not to prevent the police from doing their job." (*Id.* at 12). According to Fails, his actions did not hamper or impede the officers because "not even a minute elapsed between officers yelling at [him] and picking him up off the ground after he is handcuffed, resulting in only a de minimis delay at worst." (*Id.* at 14).

{¶20} To obtain a conviction for obstructing official business, the State must provide evidence of five essential elements:

> "(1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; ([4]) while the official is acting in the performance of a lawful duty; and (5) the defendant does so act without a privilege to do so."

*State v. Pierce*, 2017-Ohio-4223, ¶ 11 (3d Dist.), quoting *State v. Dice*, 2005-Ohio-2505, ¶ 19 (3d Dist.). On appeal, Fails only challenges the State's evidence as to the first three elements. Therefore, we will limit our analysis to the first three elements.

{¶21} With respect to the first element, Fails argues that R.C. 2921.31(A) requires that a defendant commit an affirmative act to be guilty of obstructing official business. Fails contends that he did not engage in an affirmative act when he stepped away from the front bumper of the police cruiser. Rather, "he simply failed to immediately respond to the officers' requests to stay at the bumper of the cruiser." (Appellant's Brief at 11).

**{¶22}** "'Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act[.]'" *Pierce* at ¶ 12 (3d Dist.), quoting *State v. Crowell*, 2010-Ohio-4917, ¶ 11 (2d Dist.).

**{¶23}** Here, Officer Glanemann and Officer Stephenson both testified that Fails was told multiple times to stay at the front bumper of the police cruiser. Despite being instructed to stay at the front bumper, Fails stepped away from the bumper and walked toward Officer Cox who was conducting his investigation at the passenger side of the stopped vehicle.

**{¶24}** Video footage from the dashboard camera of Officer Glanemann's cruiser was introduced at trial and played for the jury. The video footage shows that, despite being told at least three times to stay at the front bumper of the police cruiser, Fails repeatedly stepped away from the bumper. The testimonial evidence and corroborating video footage are sufficient to support the affirmative-act element of the offense of obstructing official business.

**{¶25}** With respect to the second element, Fails argues that he did not act with the purpose to obstruct the officers in their investigation. Fails contends that "when [he] stepped off the cruiser bumper for a moment, it was just to get an angle to record what was happening with the passengers." (Appellant's Brief at 12).

**{¶26}** A person acts "with purpose" within the meaning of R.C. 2921.31(A) "when it is the person's specific intention to cause a certain result, or, when the gist

of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶27} """The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.""" *State v. Swaney*, 2019-Ohio-3141, ¶ 11 (3d Dist.), quoting *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist. 2001), quoting *State v. Hardin*, 16 Ohio App.3d 243, 245 (10th Dist. 1984).

{¶28} In this case, Officer Glanemann testified that Fails had his phone in his hand and was recording the encounter when he was told to stay at the front bumper of the police cruiser. Officer Glanemann further testified that Fails was arguing with the officers and was "upset that we have the dog there and that the dog had ran around the vehicle." (Apr. 17, 2025 Tr. at 106). Moreover, Officer Stephenson testified that Fails's demeanor "progressed and escalated" during the pat-down search for weapons. (*Id.* at 145). When Fails was brought to the front of the police cruiser, Officer Stephenson stated that Fails became "[v]ery animated, aggressive it appeared, uncooperative." (*Id.*).

{¶29} The video footage played for the jury depicts Fails's agitation with the officers and their investigation. Even though Fails contends that his purpose in stepping away from the front bumper of the cruiser was to get a better angle to record the passengers being removed from the vehicle, Fails's affirmative act in

continuing to walk toward Officer Cox resulted in all four officers having to restrain him to deescalate the situation. The facts and circumstances in evidence, including Fails's aggressive demeanor and his failure to obey police orders, demonstrate that Fails acted with purpose to prevent, obstruct, or delay the officers in performing their investigation. *See Swaney* at ¶ 41 (concluding that sufficient evidence exists from which a rational trier of fact could infer that the defendant purposely acted to prevent, obstruct, or delay the officer from performing his official duties when the defendant failed to heed the officer's repeated requests to step aside and exhibited argumentative and uncooperative behavior). Thus, the State presented sufficient evidence to support the purpose element of the offense of obstructing official business.

{¶30} As to the third element, Fails contends that his actions did not hamper or impede the officers in their investigation. Fails argues that the entire incident took less than a minute such that no "substantial stoppage" took place. (Appellant's Brief at 13).

{¶31} There is no "'finite period of time [that] constitutes a "substantial stoppage," be the delay occasioned by the interference thirty seconds or two minutes.'" *State v. Wellman*, 2007-Ohio-2953, ¶ 18 (1st Dist.), quoting *State v. Dunn*, 1980 Ohio App. LEXIS 11877, *4 (1st Dist. Mar. 26, 1980). "If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." *Wellman* at ¶ 18.

{¶32} At trial, Officer Stephenson testified that it took approximately one minute for Fails to be taken to the ground and placed in handcuffs. Even though it took the officers a short amount of time to restrain Fails, Officer Stephenson explained that "it doesn't take long to get rid of evidence or to produce a weapon out of a vehicle, either." (April 17, 2025 Tr. at 151). Officer Stephenson further testified that Fails's actions hindered the officers in their investigation because all four officers were needed to restrain Fails. Fails's actions also created a safety risk for the officers since the two passengers were outside of the vehicle and neither had been patted down for weapons. The testimonial evidence and corroborating video footage are sufficient to support the hampering or impeding element of the offense of obstructing official business.

{¶33} After reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Fails engaged in an affirmative act with the purpose to prevent, obstruct, or delay the officers in their investigation, and that the officers were actually hampered or impeded in their investigation. Thus, we conclude that Fails's obstructing-official-business conviction is supported by sufficient evidence.

{¶34} In his third assignment of error, Fails argues that his resisting-arrest conviction is not supported by sufficient evidence since "there was no valid basis to arrest [him] for obstruction." (Appellant's Brief at 15). In order to establish that Fails resisted arrest, the State must demonstrate that Fails (1) recklessly or by force,

(2) resisted or interfered (3) with a lawful arrest. *State v. Harvey*, 2020-Ohio-329, ¶ 39 (3d Dist.). Notably, Fails does not challenge the sufficiency of the evidence as to the first and second elements of the offense of resisting arrest. Fails only contests the third element—that his arrest for obstructing official business was not lawful.

**{¶35}** "'Under the plain language of R.C. 2921.33(A), the arrest must be lawful in order to be convicted of the crime of resisting arrest.'" *Harvey* at ¶ 39, quoting *State v. Nye*, 1997 Ohio App. LEXIS 5577, *5 (3d Dist. Dec. 12, 1997). "'"An arrest is "lawful" if under the surrounding circumstances, the police officer had a reasonable basis or probable cause to believe that an offense has been committed.'" *Harvey* at ¶ 39, quoting *Nye* at *4.

**{¶36}** Fails asserts that "[b]ecause there was no reason to arrest [him] for obstruction, there was no lawful arrest to form the basis for resisting arrest." (Appellant's Brief at 15). To support this assertion, Fails summarizes the arguments raised in his first assignment of error. However, we have already determined that Fails's obstructing-official-business conviction is supported by sufficient evidence.

**{¶37}** Here, the record demonstrates that, at the time the officers were conducting their investigation, they had a reasonable basis or probable cause to believe that Fails was obstructing official business. In particular, Fails repeatedly stepped away from the front bumper of the police cruiser, despite being told multiple times to stay at the bumper. Fails also exhibited argumentative and aggressive behavior toward the officers and their investigation. Under these circumstances, the

officers had reasonable cause to believe that Fails was committing the crime of obstructing official business.

**{¶38}** Additionally, Fails resisted arrest by tensing his arms and pulling against the officers. When he was taken to the ground, Fails kept his left arm under his body and refused to put it behind his back. The officers had to forcibly pull Fails's left arm from underneath him and place his hands behind his back to handcuff him.

**{¶39}** After reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the officers had legal grounds to arrest Fails for obstructing official business—satisfying the element of a lawful arrest. Thus, Fails's conviction for resisting arrest is supported by sufficient evidence.

*Manifest-Weight-of-the-Evidence Analysis*

**{¶40}** In his second assignment of error, Fields argues that his obstructing-official-business conviction is against the manifest weight of the evidence because the greater weight of the evidence shows that he "did not commit any affirmative act"; he "did not act with a specific intent to hamper or impede the officers"; and his "actions did not actually hamper or impede the officers by causing a substantial stoppage in their work." (Appellant's Brief at 14).

**{¶41}** Fails testified in his own defense at trial. Fails testified that he recorded the police encounter on his phone because he "wanted to document from

start to finish what was going on." (Apr. 18, 2025 Tr. at 262). When the front-seat passenger was being removed from the vehicle, Fails stepped toward the passenger side of the vehicle. Fails explained, "I wanted to make sure that my viewers could get a good look and see exactly what was going on." (*Id.* at 264). Fails stated that it was not his intent to stop the officers in their investigation, "I simply just wanted to document everything that was going on." (*Id.* at 265).

{¶42} On cross-examination, Fails admitted that Officer Glanemann told him to stay at the bumper of the police cruiser. Fails was shown a portion of the video footage where Officer Stephenson can be seen patting Fails on the back and pointing to the front bumper of the cruiser. When asked if Officer Stephenson also told him to stay at the bumper, Fails responded, "He may have stated that, but like I said, in the heat of the moment, I didn't feel a tap. I didn't see his arm point. All I heard was stay at the bumper. I didn't know if it was her bumper, my bumper. But she said, stay at a bumper." (*Id.* at 276).

{¶43} After reviewing the evidence, we conclude that the greater weight of the evidence demonstrates that Fails committed an affirmative act when he repeatedly stepped away from the front bumper of the police cruiser. Despite being told several times to stay at the bumper, Fails walked toward the passenger side of the vehicle where Officer Cox was conducting his investigation. Even though Fails testified that he stepped away from the bumper to get a better angle to record the passenger being removed from the vehicle, Fails's conduct in stepping away from

the front bumper and moving toward Officer Cox resulted in all four officers having to restrain him. Fails's actions hindered the officers in conducting their investigation. Thus, we conclude that the greater weight of the evidence supports Fails's obstructing-official-business conviction.

{¶44} In his fourth assignment of error, Fails argues that his resisting-arrest conviction is against the manifest weight of the evidence because "there was no reasonable basis to conclude that [he] committed obstruction." (Appellant's Brief at 16). Fails does not challenge the State's evidence that he resisted or interfered with the arrest—only that his arrest for obstructing official business was not lawful. Fails contends that "the jury lost its way in finding that [he] did anything with the specific intention of hampering or impeding the officers" in their investigation. (*Id.*).

{¶45} Based on our review of the record, we conclude the jury did not clearly lose its way and create such a manifest miscarriage of justice that Fails's resisting-arrest conviction must be reversed. For the reasons previously discussed, we have concluded that Fails's obstructing-official-business conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Similarly, we conclude that his resisting-arrest conviction is not against the manifest weight of the evidence.

{¶46} Accordingly, Fails's first, second, third, and fourth assignments of error are overruled.

**Fifth Assignment of Error**

**Appellant was deprived of his constitutional right to the effective assistance of counsel under the state and federal constitutions.**

{¶47} In his fifth assignment of error, Fails argues that he received ineffective assistance of trial counsel. Specifically, he contends that his trial counsel was ineffective for failing to use a transcript of the motion hearing to cross-examine Officer Glanemann at trial.[1] According to Fails, the discrepancies between Officer Glanemann's testimony at the motion hearing and at trial "cut to the heart of Glanemann's basis for the traffic stop and bring her credibility into serious doubt." (Appellant's Brief at 18).

*Standard of Review*

{¶48} "'In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions.'" *State v. Sorrell*, 2023-Ohio-2101, ¶ 49 (3d Dist.), quoting *State v. Evick*, 2020-Ohio-3072, ¶ 49 (12th Dist.). A defendant asserting a claim of ineffective assistance of counsel must establish that (1) his counsel's performance was deficient or unreasonable under the circumstances, and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Reversal of a conviction or sentence based on a claim of ineffective assistance of counsel requires satisfying this two-pronged

---

[1] A hearing on Fails's motion to suppress was held on March 5, 2025.

test, and the failure to make either showing is fatal to the claim. *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

**{¶49}** In order to show counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 688-689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the error complained of must amount to a substantial violation of counsel's essential duties to his client. *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

**{¶50}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley*, 42 Ohio St.3d at 142. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Liles* at ¶ 48, quoting *Bradley* at 142.

*Analysis*

**{¶51}** Fails claims that he received ineffective assistance of counsel because his trial counsel failed to use the transcript of the motion hearing to cross-examine Officer Glanemann at trial. Fails argues that "[c]ompetent defense counsel would

have had a transcript ready for cross-examination and used it to pull apart Glanemann's story." (Appellant's Brief at 17).

**{¶52}** It is well established that "[t]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 2006-Ohio-2815, ¶ 101. "[T]o fairly assess counsel's performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Conway* at ¶ 101, quoting *Strickland*, 466 U.S. at 689.

**{¶53}** In this case, Fails's trial counsel questioned Officer Glanemann on the circumstances leading up to the traffic stop as follows:

> Q. And I just had a couple other things. Kind of going back now, you had mentioned that when you went to or when you were driving, you saw the license plate light out and then went past, came back, saw the vehicle you had thought had stopped on Orena?
>
> A. Correct.
>
> Q. But you never saw any doors open or anything?
>
> A. I did not see doors open.
>
> Q. Now, do you remember testifying on the motion to suppress hearing in this case previously?
>
> A. Yes.
>
> Q. Do you remember if you testified then, that you did see a door open?
>
> A. I don't remember.

Q.     Okay.  You're not sure?

A.     Yeah.

Q.     But what you recall sitting here today, is that no doors opened on that vehicle?

A.     Right.

(Apr. 17, 2025 Tr. at 139-140).  Based on Officer Glanemann's failure to recall her prior testimony, trial counsel was able to cast doubt on her credibility during closing argument to the jury.  Thus, we conclude that Fails's trial counsel's decision to cross-examine Officer Glanemann without the use of the transcript of the motion hearing is trial strategy and does not constitute ineffective assistance of counsel.

{¶54} Accordingly, Fails's fifth assignment of error is without merit.

{¶55} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
William R. Zimmerman, Judge

_____
Mark C. Miller, Judge

_____
John R. Willamowski, Judge

DATED:
/hls